Bankers Loan & Trust Company, Appellee, v. First National Bank of Mapleton, Appellant.

PAYMENT: Application—Failure to Give Definite Direction. A lender who makes a loan to a borrower and takes chattel security on certain property, on the assumption that a third party holds the borrower's prior note, secured on the same property, and who desires to retain control of the loan until the third party's obligation is released, must, in turning over the amount of the loan to the third party, definitely instruct such third party to apply the money *only on such obligation, or to return the money.* Without such definite instruction, the third party may, *if he holds no such note and security*, apply the remittance on any obligation held by him against the borrower. So held where the lender sent a draft to the third party for the full amount of the loan, with a letter stating that the draft was "in full payment" of the borrower's note, "secured by 20 head of red steers," and with a request that the uncanceled note and a release of the mortgage be returned. The third party held no *such* security, and applied the draft on other indebtedness of the borrower. *Held*, the application was proper.

*Appeal from Monona District Court.*—W. G. Sears, Judge.

MARCH 16, 1921.

ACTION for the conversion of the proceeds of a draft. The facts are stated in the opinion. Judgment in the court below for plaintiff, and defendant appeals.—*Reversed.*

*George A. Rice* and *Jepson & Struble,* for appellant.

*Kindig, McGill, Stewart & Hatfield* and *J. A. Prichard,* for appellee.

STEVENS, J.—One Enoch Buoey, on December 12, 1918, gave his note for $880 to the Bankers Loan & Trust Company of Sioux City, plaintiff and appellee herein, together with a mortgage upon 20 head of red steers and 36 hogs, to secure the payment thereof. The consideration for said note and mortgage was a loan of the above amount.

Plaintiff alleged in its petition that, on the same day, it sent by United States mail to the defendant, at Mapleton, Iowa, its draft No. 838, drawn on the Federal Reserve Bank of Chicago, for $868, payable to defendant, accompanying said draft with a letter, as follows:

"Gentlemen:

"Hand you herewith exchange for $868 in full payment of Enoch Buoey note and interest, secured by twenty (20) head of red steers, now in his feed lot.

"You will kindly forward to us the uncanceled note together with a release of mortgage.

"Yours very respectfully,

"G. C. Robinson, Cashier."

The petition further alleges that defendant cashed said draft, and wrongfully and purposely appropriated the proceeds thereof to its own use, and refused to pay same to plaintiff, although due demand has been made therefor. The defendant answered, admitting that it received the draft; that same was duly paid; and that the proceeds thereof were applied as follows: $701.14 in payment of the balance due upon a note executed to it by Enoch Buoey on January 22, 1918, for $929.74,

and due November 22, 1918; that it paid Buoey $16.86 cash, and gave him a cashier's check for $150, which was thereafter, in due course of business, paid and canceled. The defendant, however, avers that it received the draft from Buoey personally, and not by mail, and denies that it had knowledge of the above letter until after this action was commenced, when it was found among the papers of Buoey at his home; and denies the other allegations of plaintiff's petition.

Enoch Buoey lived in Monona County, a short distance west of Mapleton. It appears without dispute in the evidence that defendant held a note against Buoey, as above stated, secured by chattel mortgage upon stock and farm implements, which did not, however, include 20 head of red steers; and that the balance due thereon on December 12, 1918, was $701.14. The evidence also shows, without dispute, that the cashier of plaintiff bank, immediately after the note for $880 and mortgage were executed, on December 12, 1918, dictated the above letter to the defendant; but the evidence is in dispute as to whether it was mailed to defendant with the draft, or whether the draft was delivered to defendant by Buoey personally.

Floyd Wilson, cashier of defendant bank, with whom it is claimed the business was conducted, testified that Buoey brought the draft to the bank on the evening of December 12th, and that, on the following morning, he canceled and surrendered the note for $929.74, upon which he applied $701.14, together with the chattel mortgage held by the bank as security for the payment thereof; that he gave Buoey $16.86 cash and a cashier's check for $150, as stated above. Robinson, the cashier of appellee bank, testified positively that he inclosed the letter in an envelope with the draft, and deposited same in the United States mail, properly addressed to the defendant. The jury evidently found that the draft, accompanied by the letter, was transmitted and received by the defendant by mail.

Appellant does not complain of the form of the court's instruction, and we must, therefore, dispose of the questions presented for review upon plaintiff's theory of the facts, and as found by the jury. At the conclusion of all the evidence, appellant moved the court for a directed verdict, upon the ground that the facts shown did not entitle plaintiff to recover, and

upon the further ground that the evidence showed conclusively that the draft and the proceeds thereof were the property of Buoey, and that the bank had a right to apply the same upon the indebtedness due it from him, notwithstanding it had knowledge of the letter set out above. Counsel also moved for judgment notwithstanding the verdict, in arrest of judgment, and for a new trial. The motions for judgment notwithstanding the verdict, and in arrest of judgment, were properly overruled; so we have only to consider the motion for a directed verdict, the motion for a new trial, and certain rulings of the court upon the admission of testimony.

It will be observed that the letter accompanying the draft directed the defendant to apply the same in full payment of a note given by Enoch Buoey, secured by mortgage upon 20 head of red steers then in his feed lot, and requested that the note, uncanceled, together with a release of the mortgage, be forwarded to plaintiff. The difference between the face of the note and the amount of the draft is accounted for by Robinson upon the ground either that Buoey owed them a small balance on December 12th, or that interest may have been deducted in advance. It is not claimed by him that the amount of the draft was fixed with reference to the amount which Buoey was owing the defendant, and it is conceded that the draft was drawn for the full amount due the borrower on his loan. So far as appears in the record, Robinson did not, at the time the draft was drawn and forwarded to defendant, know the amount of Buoey's indebtedness to the bank. He had, however, just taken a mortgage to secure the payment of a note to the plaintiff bank upon 20 head of steers, under the evident belief that the defendant had a mortgage covering the same property.

Plaintiff's mortgage was recorded in Monona County on December 20th, notwithstanding the fact that no word had been received from the draft sent to defendant. Shortly after, on December 12, 1918, Enoch Buoey absconded, and the evidence shows that he did not have 20 head of red steers at the time the mortgage was given, nor at any time thereafter.

It is the claim of counsel for appellee that it was the duty of the defendant bank to apply the proceeds of the draft absolutely as directed by the letter accompanying it, and that, hav-

ing failed to do so, it cannot be heard to say in defense that it in fact applied same upon Buoey's other indebtedness. On the other hand, it is contended by counsel for appellant that the draft was the property of Buoey, and that plaintiff had no right to direct the disposition thereof, and that, in any event, plaintiff was in no way injured by the application made of the money by defendant. The letter accompanying the draft stated that it was forwarded in full payment of the note of Enoch Buoey which was secured by mortgage upon 20 head of red steers. The note held by defendant against Buoey was secured by mortgage, but not upon red steers. The letter placed no other limitation upon the defendant than that the money should be applied in full payment of the note secured by mortgage upon the red steers. There was nothing therein to indicate that the draft was to be returned to plaintiff, if the defendant did not hold a mortgage on 20 red steers, nor is there anything in the transaction between Buoey and the bank to show that it was the intention that a draft was to be used only in payment of a note held by defendant and secured by mortgage upon 20 head of red steers. Obviously, Robinson desired that the bank should retain such control over the proceeds of the loan as was necessary to secure the release of the mortgage which he supposed the defendant bank had on the red steers.

The transaction is a common one, in which a borrower, desiring to secure a new loan by executing a mortgage upon property already incumbered, consents that the lender may retain control of the money, for the purpose of insuring the release of the prior incumbrance. The draft, even upon the testimony of Robinson, was clearly the property of Buoey, and was forwarded to defendant for its use in paying certain of his indebtedness thereto, and to insure the release of a mortgage which Robinson supposed the defendant had on the red steers. Buoey was indebted to the defendant bank, as stated; and, in the absence of something to indicate that the draft was forwarded by plaintiff for application only upon indebtedness secured by mortgage upon certain property, defendant had a right to apply it in the manner shown. The reference to a mortgage upon 20 red steers was evidently intended to indicate the mortgage that plaintiff wanted released. It is no doubt true that, if defendant

had promptly notified plaintiff that it did not have a mortgage on 20 red steers, discovery of the fraud practiced by Buoey might have followed in time to have enabled plaintiff to recall the draft. Failure of defendant to so notify plaintiff did not, however, affect its right to credit the draft upon Buoey's note. Appellee's theory that the transaction resulted in a specific deposit of the fund for its benefit is without merit. The facts do not bring the case within the doctrine of the cases cited. Defendant's motion for a directed verdict should have been sustained. The evidence was not such as to justify the submission of the issues to the jury. Other questions discussed by counsel do not, in view of the conclusion already announced, require discussion. The judgment of the court below is—*Reversed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.